FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 22, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SCOTT C.,[1]

                Plaintiff,

     v.

FRANK BISIGNANO,
Commissioner of Social Security,

                Defendant.

No.   2:26-cv-3-EFS

**ORDER AFFIRMING THE ALJ'S DENIAL OF BENEFITS**

     Plaintiff Scott C. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims he is unable to work due to epilepsy, which he argues limits his ability to

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

concentrate more than the ALJ found. Substantial evidence supports the ALJ's decision that Plaintiff had a residual functional capacity (RFC) to "perform simple, routine, and repetitive tasks with no detailed work" without further limitations based on his ability to concentrate, persist, and maintain pace. In crafting the RFC, the ALJ reasonably discounted Plaintiff's subjective symptoms and properly evaluated the medical opinions. For the reasons that follow, the ALJ's decision is affirmed.

## I.    Background

Plaintiff filed his Title 16 application for benefits on March 5, 2022. In applying for benefits, Plaintiff alleged disability beginning June 1, 2020, due to epilepsy and "[o]ther specified disorders of brain."[2]

Plaintiff appeared for a hearing before ALJ Caroline Siderius in June 2024 and testified that he had not worked since he started having

---

[2] Administrative Record (AR) 247, 286. Because the application filing date starts the relevant period for Title 16 claims, the ALJ appropriately considered whether Plaintiff was disabled beginning March 5, 2022.

DISPOSITIVE ORDER - 2

seizures in 2020.[3] He testified that he had not had a grand mal seizure "in a little while" since he started taking medication, but he still experienced episodes two or three times a day for up to thirty minutes where he would feel like he was about to have a seizure, black out, and forget what he was doing.[4] He testified that he had "huge" gaps in his memories of the last ten years and his memory issues prevented him from learning new things.[5] The ALJ continued the hearing so Plaintiff could obtain and submit treatment records of his seizures.[6]

At a second hearing in November 2024, a medical expert, James Haynes, MD, testified that the treatment records showed that Plaintiff developed a form of epilepsy with convulsive seizures.[7] The last documented seizure was in 2022.[8] Dr. Haynes testified that Plaintiff's

---

[3] AR 46.

[4] AR 46–50.

[5] AR 51, 54–55.

[6] AR 51–53.

[7] AR 63–64.

[8] AR 64.

DISPOSITIVE ORDER - 3

treating doctor wanted to use an epilepsy monitoring unit to assess Plaintiff's reported nocturnal spells and blackouts, which his doctor believed were some form of epileptic seizures, but Plaintiff declined.[9] Plaintiff testified that he declined the epileptic monitoring unit because he "stress[es] so bad and [is] really bad in those environments" so he "didn't really think it would help."[10] He testified again that he continued having daily blackouts and memory loss which prevented him from learning new things.[11] A vocational expert testified that a hypothetical individual of Plaintiff's age, education, and work history, who could perform a range of medium work limited to simple, routine, and repetitive tasks, could work as a store laborer, hand packager, or floor waxer.[12] The same individual could not sustain competitive

---

[9] AR 64–66.

[10] AR 67.

[11] AR 73–77.

[12] AR 78–79.

DISPOSITIVE ORDER - 4

employment in any occupation if he needed unexpected extra breaks or frequent redirection for off-task behavior.[13]

The ALJ issued a decision finding Plaintiff not disabled.[14] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent" with the medical evidence and other evidence.[15] The ALJ considered the lay statements from Plaintiff's father.[16] As to the medical opinions, the ALJ found:

- the reviewing testimony of Dr. Haynes persuasive.
- the reviewing opinions of Gurcharan Singh, MD, Gary Smith, MD, and Michael B., PhD, persuasive.

---

[13] AR 79–80.

[14] AR 24–34. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[15] AR 29. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499 n.2 (9th Cir. 2022).

[16] AR 31.

DISPOSITIVE ORDER - 5

- the reviewing opinion of Hillel Raclaw, PhD, not persuasive.[17]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since March 5, 2022, the application date.
- Step two: Plaintiff had the medically determinable severe impairment of epilepsy.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to perform "medium work" as defined in 20 C.F.R. § 416.967(c), except Plaintiff could never climb ladders, ropes, or scaffolds; could have no exposure to unprotected heights; could not operate heavy machinery or move mechanical parts; and could perform simple, routine, and repetitive tasks with no detailed work.
- Step four: Plaintiff had no past relevant work.

---

[17] AR 31–32.

DISPOSITIVE ORDER - 6

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as store laborer, hand packager, and floor waxer.[18]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[19] Plaintiff now appeals to district court.[20]

## II.   Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[21] and such error impacted the nondisability determination.[22] Substantial evidence is

---

[18] AR 26–34.

[19] AR 1–3.

[20] ECF No. 1.

[21] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[22] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may

DISPOSITIVE ORDER - 7

"more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[23]

### III.  Analysis

Plaintiff argues the ALJ erred in evaluating his limitations in maintaining concentration, persistence, and pace when formulating the RFC by (1) not providing clear and convincing reasons to discount his subjective symptoms connected to his epilepsy-related concentration

---

not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[23] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 8

issues, and (2) improperly assessing Dr. Raclaw's opinion. The Commissioner argues the ALJ reasonably discounted Plaintiff's subjective reports and appropriately evaluated Dr. Raclaw's opinion.

**A.    Symptom Reports: Plaintiff fails to establish consequential error.**

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effect of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.[24] Plaintiff argues the ALJ failed to provide valid reasons for discounting his reported epilepsy-related concentration issues. As is discussed below, the ALJ's reasons for discounting Plaintiff's symptoms are clear and convincing reasons supported by substantial evidence.

    1.    <u>Standard</u>

After finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work.[25] Factors the

---

[24] AR 29.

[25] 20 C.F.R. § 416.929(c).

DISPOSITIVE ORDER - 9

ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) objective medical evidence; 2) daily activities; 3) the location, duration, frequency, and intensity of pain or other symptoms; 4) factors that precipitate and aggravate the symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and 7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[26]

If the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to

---

[26] *Id.* § 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:25, Consideration of objective medical evidence (2025).

DISPOSITIVE ORDER - 10

evidence.[27] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[28]

### 2. Plaintiff's Subjective Symptoms

The record contains the following subjective reports of Plaintiff's concentration or related symptoms, whether independent from or intertwined with his memory symptoms.

In a function report dated July 24, 2022, Plaintiff reported, "Overall I can't concentrate. I lose my train of thought and say the wrong words often. I'll go somewhere and forget why. If I learn something new I usually forget it. A lot of my memories are just gone."[29] He reported that his memory, concentration, understanding, and ability to complete tasks "are all affected after seizure," but also

---

[27] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022); 20 C.F.R. § 416.929(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

[28] *Smartt*, 53 F.4th at 499 (alteration added).

[29] AR 303.

DISPOSITIVE ORDER - 11

his memory and concentration were "always affected."[30] In response to, "For how long can you pay attention," Plaintiff wrote, "I lose my train of thought very easily."[31] He indicated he does not finish what he starts.[32]

In a function report dated June 28, 2023, Plaintiff reported that his memory loss affected his abilities in completing tasks, concentration, understanding, and following instructions.[33] In response to, "For how long can you pay attention," Plaintiff wrote, "I lose attention easily. I forget what I'm doing."[34] He indicated he does not finish what he starts.[35]

At both the June 2024 and the November 2024 hearing, Plaintiff testified that he experienced daily episodes where he would black out

---

[30] AR 308.

[31] *Id.*

[32] *Id.*

[33] AR 353.

[34] *Id.*

[35] *Id.*

DISPOSITIVE ORDER - 12

and forget what he was doing, which prevented him from learning new things.[36]

### 3.    ALJ's Reasons

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the treatment records from Plaintiff's neurologist, lack of medically determinable mental health impairment or treatment for a psychiatric condition, choice to decline other recommended treatment, consultative evaluation, the prior administrative medical finding of Dr. B., and activities of daily living.[37]

The ALJ considered that Plaintiff's neurologist, Natasha Sparrow, DO, reported the following: Plaintiff had the onset of seizures in 2020; his last documented seizure was in July 2022; Plaintiff reported his seizures were "mostly nocturnal and occasional daytime

---

[36] AR 47, 49–51, 55, 73–77. Plaintiff's seizure questionnaire dated June 12, 2023, does not report concentration-related symptoms. *See* AR 345–47.

[37] AR 29-32.

episodes of confusion and loss of time lasting hours"; he was "amnestic of the events only recognizing that he lost time"; he "recorded a few videos of his nocturnal episodes," which showed "tonic posturing with both arms outstretched, wrists flexed, followed by a generalized tonic clonic convulsion lasting less than a minute"; Plaintiff reported that during episodes, he "is incontinent and bites both sides of his tongue"; and after episodes, "he is confused and loses time, complaining of generalized fatigue and pain."[38]

On May 5, 2023, Dr. Sparrow noted that Plaintiff had reported no breakthrough seizures since changing his medication regimen, but he said he had "'all kinds of issues.' He 'blacks out for 1-2 hrs at a time[] and drools on himself and loses time every day multiple times per day.'"[39] Plaintiff's EEG following this report was normal.[40] Dr. Sparrow

---

[38] AR 29–30, 720. *See, generally*, AR 742–76 (Dr. Sparrow's notes documenting seizures and treatment from April 2021 through last documented seizure in July 2022).

[39] AR 725.

[40] AR 730–32.

DISPOSITIVE ORDER - 14

shared the normal results with Plaintiff and asked if a prior event he marked was one of his "typical 'blackout episodes which last 1-2 hrs at a time' and associated with 'drooling on himself' which he reported . . . having daily."[41] Plaintiff responded he did not remember what the event was but it was not like the blackouts he reported before.[42]

On September 21, 2023, Dr. Sparrow noted that Plaintiff reported having no seizures that he knew of because he did not wake up with a bitten tongue or sore throat.[43] Dr. Sparrow also noted, "He still complains of 'falling asleep and waking up drooling, but in the same position and groggy after that.'"[44]

On January 9, 2024, Dr. Sparrow noted that Plaintiff reported having no seizures and "continues to be doing well overall."[45] Dr. Sparrow also noted, "Brought a video during which he is sitting

---

[41] AR 733.

[42] *Id.*

[43] AR 716.

[44] *Id.*

[45] AR 712.

DISPOSITIVE ORDER - 15

and appears to be dozing off with head intermittently dropping. Takes n[]aps every day for ~10 min."[46]

On July 9, 2024, Dr. Sparrow noted that Plaintiff reported having no seizures and continuing to do well.[47] Dr. Sparrow also noted, "Continue to complain of memory being bad. Discussed neuropsych testing, but he is not interested."[48]

The ALJ also considered that Dr. Sparrow noted all normal physical and mental findings upon examinations in May 2023, June 2023, September 2023, January 2024, and July 2024.[49]

The ALJ also considered that Plaintiff declined Dr. Sparrow's repeated advice that he be evaluated by an epileptic monitoring unit (EMU).[50] Dr. Sparrow first discussed EMU evaluation in July 2022 if

---

[46] *Id.*

[47] AR 780.

[48] AR 780–81.

[49] AR 29–30, 715, 719, 723, 728, 783.

[50] AR 30. "An epilepsy monitoring unit (EMU) is an inpatient unit run by specialists in epilepsy. EMUs provide in-depth diagnostic and

DISPOSITIVE ORDER - 16

he continued having seizures, but noted Plaintiff was "not ready to do that yet."[51] When Plaintiff reported blackouts in May and June 2023, Dr. Sparrow recommended EMU evaluation each time, but Plaintiff declined.[52] When Plaintiff reported "falling asleep and waking up drooling . . . and groggy" in September 2023, Dr. Sparrow wrote, "At this point I am not sure what this means. He cannot give me any other info. He refuses to come to the EMU. We had another conversation about it today--same response--declined."[53] Dr. Sparrow wrote in July 2024, "Discussed EMU evaluation again to make sure he is not having any subclinical seizures, but he declined."[54] The ALJ stated:

---

treatment services for people with difficult to diagnose or treat seizures and are typically part of a specialized epilepsy center . . . ." American Epilepsy Society, https://aesnet.org/clinical-care/emus (last visited May 14, 2026).

[51] AR 742.

[52] AR 720–21, 725.

[53] AR 716.

[54] AR 781.

DISPOSITIVE ORDER - 17

> The undersigned notes the claimant has declined to do an Epilepsy Monitoring Unit (EMU) . . . . The undersigned notes the claimant testified he had not undergone this procedure because of stress. The undersigned notes the evidence does not reflect any treatment for a psychiatric condition. The claimant's failure to pursue EMU treatment suggests his seizures are not as significant as alleged.[55]

The ALJ also considered the consultative psychological evaluation conducted by Laura Newsom, APRN, on August 13, 2023, as follows:

> The undersigned finds the claimant is reasonably limited to simple, routine, and repetitive tasks with no detailed work, given his complain[t]s of memory problems. During the consultative psychological evaluation . . . the claimant was unable to recall five words given to him three minutes later . . . . However, no further limits than this are consistent with the overall record. For example, during the consultative evaluation with Ms. Newsom, the claimant's stream of mental activity was logical and linear, without tangential or circumstantial thoughts, he was able to recall four numbers given to him in reverse order, and he also was able to spell the word "world" in the reverse direction . . . .[56]

Additionally, Nurse Newsom noted that Plaintiff denied depression and anxiety but endorsed situational anxiety related to making

---

[55] AR 30 (citing AR 716, 720, 725, 781).

[56] AR 31 (citing AR 650–51).

DISPOSITIVE ORDER - 18

appointments on time; only reported memory issues and not being able to drive when asked how his mental health has impacted his ability to work and function; had no psychiatric disorders or diagnoses; had no impairment in functioning related to mental health; and had no impairment in his ability to sustain attention and perform simple repetitive tasks.[57]

The ALJ also considered that Dr. B. reviewed the medical records in conjunction with the denial of Plaintiff's claim on reconsideration and found that Plaintiff did not have a medically determinable severe mental impairment.[58] The ALJ stated:

> This opinion is found to be persuasive, as it is consistent with the overall record. The claimant has not been diagnosed with a mental impairment. However, the undersigned notes that the claimant's memory complaints have been considered along with epilepsy, and the claimant has been limited to simple, routine, and repetitive tasks with no detailed work.[59]

---

[57] AR 648–52.

[58] AR 105.

[59] AR 32.

DISPOSITIVE ORDER - 19

Finally, the ALJ considered Plaintiff's activities of daily living, finding Plaintiff "continues to engage in a fairly wide range of basic activities of daily living" based on his July 2022 function report that Plaintiff cared for pets, prepared meals, cleaned, did laundry, mowed, went outside every day, and shopped by computer.[60]

### 4.    Analysis

The ALJ provided clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's symptom reports and find he was not more mentally limited than provided in the RFC. First, the ALJ considered the entire treatment history with Dr. Sparrow and, as set out above, none of Dr. Sparrow's records corroborate issues with maintaining concentration because of seizures. Dr. Sparrow's records confirm that Plaintiff did not have a medically corroborated seizure since July 2022, Plaintiff continually reported doing well on

---

[60] AR 31 (citing AR 303–10). The remainder of the ALJ's discussion and the underlying evidence relates to Plaintiff's physical-exertional capabilities, which are not at issue.

DISPOSITIVE ORDER - 20

medication, Plaintiff never complained of concentration issues to Dr. Sparrow, and Plaintiff had normal mental status on every exam.

Second, the ALJ appropriately discounted Plaintiff's complaints because he declined evaluation for his reported nocturnal spells and blackouts. An inadequately explained failure to seek or comply with treatment is a relevant factor for the ALJ to consider when assessing the claimant's symptom reports.[61] In doing so, the ALJ must discuss whether the claimant had good cause for not seeking treatment.[62] Here, the ALJ correctly noted that Plaintiff was not interested in

---

[61] 20 C.F.R. § 416.929(c)(3).

[62] *See Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (holding an ALJ may not reject a claimant's symptom testimony based on a lack of treatment if "the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions"); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

Dr. Sparrow's neuropsychiatric testing and repeatedly declined Dr. Sparrow's suggestion that he undergo evaluation by an EMU, which would have enabled Dr. Sparrow to investigate and treat his reported nocturnal spells and blackouts.[63] The ALJ also considered whether Plaintiff had good cause to decline the EMU, noting that Plaintiff testified that he was stressed by the EMU, but also correctly noting that there was no evidence of treatment for a psychiatric condition.[64] Plaintiff's stress is valid, but the ALJ rationally doubted that stress was a good reason to forego evaluation of episodes claimed to be so severe and frequent. Therefore, the ALJ's finding that Plaintiff's "failure to pursue EMU treatment suggests his seizures are not as significant as alleged" is supported by substantial evidence.

Third, substantial evidence supports the ALJ's reliance on Nurse Newsom's consultative evaluation and Dr. B.'s prior administrative medical finding. Plaintiff did not complain to Nurse Newsom that he had concentration issues; his thought process on evaluation was logical

---

[63] *See* AR 30, 716, 720, 725, 781.

[64] *See* AR 30, 67.

DISPOSITIVE ORDER - 22

and linear with no tangential or circumstantial thoughts; and Nurse Newsom opined that Plaintiff had no mental functioning limitation, and specifically no limitation in his ability to sustain attention and perform simple repetitive tasks.[65] Additionally, both Nurse Newsom and Dr. B. considered that the records contained no mental-health diagnosis, with Dr. B. also opining that Plaintiff had no medically determinable mental impairment.[66]

Plaintiff's activities of daily living, however, are not among the clear and convincing reasons supported by substantial evidence to support the ALJ's discounting of Plaintiff's symptoms. The ALJ did not explain, and the Court does not see, how caring for pets, preparing meals, doing chores, going outside, and shopping online relate to concentration capabilities needed to sustain fulltime work.[67] This error

---

[65] AR 648–52.

[66] AR 105.

[67] *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery

DISPOSITIVE ORDER - 23

is harmless, however, because the ALJ offered the other clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptoms discussed above.[68]

Notably, Plaintiff does not argue that the ALJ irrationally discounted his subjective complaints based on the treatment records (or any medical records), that he declined EMU and neuropsychiatric testing, lack of mental-health diagnosis, or the consultative evaluation.

---

shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

[68] *See Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that any error the ALJ committed in asserting one impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's ultimate conclusion that the claimant's testimony was not credible).

Instead, Plaintiff argues that while the ALJ's reasons might have been specific to memory, they were not sufficiently specific to concentration, and were internally inconsistent for incorporating memory limitations but not concentration limitations. But the ALJ's reasoning was specific to Plaintiff's concentration-related issues, not just memory. The ALJ acknowledged Plaintiff's specific concentration complaints, discussed the records relevant to concentration, many of which were intertwined with the records relevant to memory, and determined that a limitation to "simple, routine, and repetitive tasks with no detailed work" was appropriate.[69] This limitation is sufficiently specific to Plaintiff's ability to maintain concentration.[70] Further, the ALJ discounted the alleged

---

[69] This limited Plaintiff to "unskilled" work, "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time . . . and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. § 416.968(a).

[70] The SSA classifies an individual's ability to concentrate, persist, or maintain pace as part of the individual's ability to understand, carry

DISPOSITIVE ORDER - 25

severity of Plaintiff's seizures overall based on his refusal to have his complaints evaluated, and Plaintiff only connected his concentration issues to those seizures.[71] And the ALJ's reasoning was not internally inconsistent. Rather, despite Plaintiff not having a medically determinable mental impairment, he consistently reported memory problems over several years and a short-term memory task on the consultative evaluation supported some memory limitations, whereas there are no similar consistent complaints or corroboration of concentration issues.

Plaintiff also argues that Dr. Raclaw's opinion that he had a mild limitation in concentration undermines the ALJ's reasons, but as explained in the next section, the ALJ reasonably considered Dr. Raclaw's opinion.

---

out, and remember simple instructions, noting that "concentration is not critical" for unskilled work. Program Operations Manual System DI 25020.010(B)(2)(a), (B)(3)(d).

[71] *See* AR 30, 303, 308, 353.

DISPOSITIVE ORDER - 26

**B.    Medical Opinions: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ improperly assessed Dr. Raclaw's opinion that Plaintiff had a "mild" limitation in his ability to concentrate, persist, or maintain pace. Plaintiff argues the ALJ did not address the supportability and consistency of Dr. Raclaw's opinion except for stating Plaintiff did not have a medically determinable mental impairment. Plaintiff contends medical records of his anxiety supported Dr. Raclaw's opinion. Plaintiff contends that a limitation related to his mild difficulty concentrating, persisting, or maintaining pace would change the RFC. As is discussed below, the ALJ followed the correct legal standards and substantial evidence supports finding Dr. Raclaw's opinion not persuasive.

1.    <u>Standard</u>

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with

DISPOSITIVE ORDER - 27

and supported by the record.[72] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[73] Supportability and consistency are the most important factors.[74] The regulations require the ALJ to consider and explain the supportability and consistency of each medical opinion.[75] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[76]

### 2. Dr. Raclaw

On  January 13, 2023, as part of the initial consideration of Plaintiff's claim, Dr. Raclaw reviewed the medical evidence of record according to the psychiatric review technique for determining whether

---

[72] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[73] 20 C.F.R. § 416.920c(c)(1)–(5).

[74] *Id.* § 416.920c(b)(2).

[75] *Id.*

[76] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

DISPOSITIVE ORDER - 28

Plaintiff had a severe mental impairment at step two.[77] Dr. Raclaw opined that Plaintiff had a non-severe anxiety disorder.[78] Dr. Raclaw opined that Plaintiff had no limitations in his ability to "[u]nderstand, remember, or apply information"; "[i]nteract with others"; and "[a]dapt or manage oneself."[79] But Dr. Raclaw opined that Plaintiff had a "[m]ild" limitation in his ability to "[c]oncentrate, persist, or maintain pace."[80] As an "additional explanation," Dr. Raclaw wrote:

> This 42-year-old claimant alleged physical difficulties. On 7/24/22 he and his Father each completed a well-written ADL questionnaire, noting that the claimant provides self-care, cooks, cleans and shops via computer, while checking cognitive issues.
>
> The Providence Hospital note of 1/10/22 notes the absence of memory difficulties, absence of depression, absence of anxiety and absence of substance abuse and by 10/26/22 there is no []cognitive impairment.
>
> The Charles Valley Medical Center note [o]f 10/12/22 indicates that Anxiety was indicated, however, the claimant

---

[77] AR 90–92.

[78] AR 90–91.

[79] AR 91.

[80] *Id.*

DISPOSITIVE ORDER - 29

was not interested in related treatment, preferring Cannabis use.

In summary, the mental issue is per se non severe.[81]

Dr. Raclaw did not opine that Plaintiff had any mental RFC limitations.[82]

The ALJ considered Dr. Raclaw's opinion as follows:

> A state agency medical consultant, Hillel Raclaw, Ph.D., reviewed the claimant's records on January 13, 2023 (Ex 1A). Dr. Raclaw found the claimant had a medically determinable anxiety disorder, but that []he had no limitations with understand, remember or apply information, no limitations with interacting with others, mild limitations with concentrate, persist or maintain pace, and no limitation with adapt or manage oneself. Thus, []he was found to have no severe mental impairment. This opinion is not found to be persuasive, as the record does not reflect the claimant has a medically determinable mental impairment, as discussed above.[83]

---

[81] *Id.*

[82] *See* AR 90–92. *See also* AR 93–97.

[83] AR 32. Earlier in the ALJ's decision, at step two, the ALJ found that Plaintiff did not have a medically determinable mental impairment because he was not diagnosed with a mental health condition, citing a

DISPOSITIVE ORDER - 30

### 3.    Analysis

The ALJ adequately considered and explained the supportability and consistency of Dr. Raclaw's opinion. The ALJ articulated how she considered the supportability of Dr. Raclaw's opinion by explaining that Dr. Raclaw's opinion was based on his review of the medical records and his impression that Plaintiff had an anxiety disorder, and by citing to the initial-determination explanation that indicated which records Dr. Raclaw reviewed in making his findings.[84] The ALJ also articulated how she considered the consistency of Dr. Raclaw's opinion

---

consultative psychological evaluation and a primary-care examination. AR 26–27 (citing AR 648–52, 659–60, 663).

[84] *See* AR 32, 90–92. *See also* 20 C.F.R. § 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

DISPOSITIVE ORDER - 31

by explaining that the record did not reflect a medically determinable mental impairment.[85]

Substantial evidence supports the ALJ finding Dr. Raclaw's opinion not persuasive because, for the several reasons explained in the preceding section in this order, substantial evidence in the record discounted concentration limitations and no other medical source in the record found a medically determinable mental impairment. Dr. Raclaw identified a single record, "[t]he Charles Valley Medical Center note [o]f 10/12/22 indicates that Anxiety was indicated," supporting his finding that Plaintiff's anxiety caused a mild limitation in concentration.[86] However, this record is actually from October 12, 2020, before the relevant time period, and does not support mental

---

[85] *See* AR 32; 20 C.F.R. § 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

[86] AR 91.

DISPOSITIVE ORDER - 32

limitations.[87] Plaintiff points to Dr. Sparrow's note from July 2022 that Plaintiff "is nervous/anxious," as well as her notes simply repeating that Plaintiff has a history of anxiety based on that initial note,[88] but this evidence does not defeat the substantial evidence supporting the ALJ's evaluation of Dr. Raclaw's opinion.

The Commissioner asserts that Plaintiff's argument is inapposite because Dr. Raclaw advised that Plaintiff's anxiety was not a severe medically determinable mental impairment at step two of the sequential evaluation process and therefore did not advise any mental-RFC limitations.[89] The Court disagrees, because the crafted RFC must

---

[87] AR 401–02 (at appointment date "10/12/2020," a nurse noted that Plaintiff visited the provider to establish care and said he "struggles with anxiety, but does not want to take any pills or go to counseling. He states his marijuana use helps his anxiety.").

[88] *See* ECF No. 10 at 9; AR 597, 712, 716, 720, 724, 733, 738, 742, 751–52.

[89] *See* ECF No. 12 at 10.

DISPOSITIVE ORDER - 33

take into account all impairments, both severe and non-severe.[90] Dr. Raclaw's "mild" finding was still relevant evidence for the ALJ to consider at the RFC stage, despite being made as part of a non-severe step-two analysis. In any event, the ALJ did consider Dr. Raclaw's "mild" finding in crafting the RFC, and substantial evidence supports finding Plaintiff not more mentally limited than provided in the RFC.

## IV.    Conclusion

Plaintiff fails to establish that the ALJ consequentially erred. The ALJ's nondisability findings are supported by explanation and substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **AFFIRMED**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and 12**, enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

//

//

---

[90] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

DISPOSITIVE ORDER - 34

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 22nd day of May 2026.

_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 35